in this case regarding that that warranted or or led to the the jury's verdict in this case it really was was two pieces of evidence I would say that certainly significant was a videotape but with respect to the other evidence it really based solely on the defendant's training and this evidence was used by the prosecutors to establish the mental state required for Mr. Proano's conviction here and we believe that it was improperly used for several reasons that the training that was introduced as evidence in this case was training of local Chicago Police Department policy not nationally recognized federal standards obviously as the court knows that the policy violation or a failure to follow training of a local agency is not a violation of the federal Constitution it's not evidence of willfulness and section 242 crime it's a specific intent crime there has to be a willful deprivation of a federal right not a deprivation or a violation of a police department policy or training issue. Mr. Hubbard you said that the training evidence is not evidence of a constitutional violation which this court said in Thompson versus City of Chicago but you also said that it's not evidence of intent what's your basis for that? Well with respect to Thompson evident local training could be relevant to a federal Constitution claim if it is based upon national policies we didn't have that here we had local Police Department policies but with respect to the to the mental state. What national policies are there? Well there is a use of force policy that is that is. We don't have a national police force are you talking about professional organizations just agreeing? There's a use of force policy it's it's a module that is essentially the same in all departments with various. That comes from where? It comes from that's a good question I believe it comes from it's been utilized by departments and it's been revised over the years based upon obviously court decisions but it's a use of force policy manual that is essentially utilized in some manner by all these national local agencies by the local agencies not national. Okay and then with respect to intent. What's your that the evidence of training cannot be evidence of intent because that's not what Thompson says. The evidence of training if it if it is based upon if it's based upon the federal Constitution training with respect to the federal Constitution that certainly that that is in line with Thompson but the evidence here that was relied upon and I believe misled the jurors was evidence regarding Police Department policy with respect to shooting weapons while on the range. But Thompson dealt with the general orders of the Chicago Police Department and whether or not they could be used to establish what's reasonable force for purposes of a constitutional violation. Thompson did not address the second point that you're raising now the intent question and the willfulness question so my question to you is what is your basis Mr. Herbert to argue to this court that the evidence of training on local policies can't be used as evidence of what Thompson addressed. Marco Prano when he used his force if he violated some local training it would have to show that that the local training would lead him his violation of that would would lead to a mental state that Marco had when he fired his weapon. And I certainly understand what your argument is and what you argue to the jury my question is what's your legal basis are you asking us to create new law here are you asking us to expand Thompson what's your legal basis for saying that this training can't be used as evidence of willfulness? I would say that it can't be used it can't be it can't be the sole basis to determine willfulness and that was essentially the sole basis. Can it be admissible? I'm sorry I thought your argument was it's not even admissible. Well I think the way it was presented here it should not have been admissible because the foundation was not laid for the witnesses that provided that testimony. That's a different question okay but the foundation question but let me ask you Mr. Hurwitz let's imagine a different case involving a police officer's use of force would the police officer be permitted to testify that he thought his use of force was consistent with his training? Yes. That would be highly relevant to his intent correct? Whether he was intentionally violating constitutional rights of civilians? Yes I would agree with you on that. So why can't the government use it the other way? Well because the way the government they can they can use it I'm not saying that they can't use police department training but I'm what I were saying is that their use of training in this case did not go to... I don't understand your argument I thought you were taking a much broader position. What was specific about this case that you think makes this evidence of his training inadmissible? Because the training evidence was was used in a manner to show my client's mental state and it was not relevant to the situation in which my client was charged. I understand I understand your words I don't understand the logic there. Well Mr. Perrano obviously there's been dozens of cases where police officers have fired at fleeing vehicles and it has not been a section 242 case it has not been it's been dismissed in 1983 cases. So with that backdrop then there has to be some some clear policy some clear constitutional violation that Mr. Perrano was aware of when he fired his weapon that would constitute the element of mens rea and the evidence in this case regarding the training and if in fact he violated the training that doesn't go towards Mr. Perrano's actions when he fired his weapon. It doesn't go towards his actions the argument it goes towards his intent. Well I would argue that it doesn't. Just so I understand because I'm having a hard time following you as well I thought you were arguing that as a matter of law training evidence is not admissible to establish specific intent. Is that your argument? No that's not our argument. Okay so you're more narrow. Please if you would explain what your argument was because I thought you were asking for the broader. Well no we're not asking we're not saying that it can never be used to establish intent but what we're saying is that it the way that the training that was evidence that was presented in this case was insufficient or irrelevant to the intent and willfulness element for Marco Perrano because of the fact that it was based upon a some local police department policies that simply were irrelevant to Mr. Perrano's decision to force in this case. They were talking about firing into crowded buildings or firing into vehicles or firing two rounds when you're on the range pausing and waiting for the target to to turn and then firing another two rounds. That evidence was clearly persuasive for the jury in this case and we believe. For example the pausing after firing two rounds was that only for firing range or was that to be used in actual situations? Well it's unclear from the evidence in this case but because Mr. Jameson is the individual that provided that testimony and clearly that was the that was the position he was taking on direct was that you're supposed to fire two rounds and pause and on cross it became a lot more clear that that that is that is a policy that's for the range and he admitted that you fire until the threat is eliminated but the... So the cross-examination brought that out? It did it did but I here the if you look at the government's closing argument really the only pieces of evidence that it had were the videotape and the evidence of training and they they relied upon that violation of training thoroughly in their analysis here and then just finally... Why isn't that a question of fact for the jury? I'm just why wouldn't that be a question of fact for the jury you've just laid out for us what the cross-examination showed why isn't that up to the jury to make that determination? Because I don't think a juror can can make that determination when the jury instructions define willfulness the way that it did here and you know and that's our final point is that we believe that the court gave a general intent instruction when it should have given a specific intent instruction and we believe that all those reasons the evidence simply did not support that there was a willful deprivation of a federal right here there was no open defiance or reckless disregard for a constitutional violation the government misled that the jurors by focusing on the the occupants in the vehicle and their constitutional rights being violated well the occupants in the vehicle did not in this case did not have a constitutional right that was relevant to Marco Prano's shooting in this case. I beg your pardon? They didn't? They were not, Mr. Prano was not alleged to have violated the occupants. You mean the three who were not actually hit by shots? Correct. You're not saying the two victims who were hit by? I am not I am not saying those. Okay. I am not saying those. So with that if there's no other questions I will sit down. Thank you. Good morning may it please the court my name is Georgia Alexakis and I represent the United States this court should affirm the defendants convictions the district court did not abuse its discretion in admitting evidence of the defendants training evidence that was used both by the government and the defendant the evidence the training evidence demonstrated what the defendant knew at the time that he acted namely when he fired 16 bullets into a car full of teenagers and continued to fire even as that car rolled to a stop that training evidence was thus relevant to establishing whether the defendant acted willfully the training evidence to be clear was not admitted for purposes of establishing the objective reasonableness element of a section 242 violation and that's consistent with this circuits case law and case law across the circuits that a violation of police practice is not a violation of the Fourth Amendment with respect to the objective reasonableness inquiry but as the district court found consistent with this circuit and other courts across the country training evidence can be admitted again for a limited purpose for purposes of proving a defendant state of mind so here the defendant could argue as he did and as I think he conceded just a few minutes ago that he properly did so that his compliance with aspects of his training suggested that he did not act willfully and similarly the government could argue as it did during the course of the trial that the defendants failure to act according to his training allowed the jury to infer that the defendant knew he was acting in an unlawful manner and the government advanced this argument in a couple of different ways so for example the government pointed to the fact the defendant emerged from his squad car with his handgun already drawn held in one hand cocked sideways and the government's argument was that the jury could infer willfulness from those actions which were contrary to the manner in which the defendant had been trained because as the district court explained those actions indicated that the defendant came out of that car quote without necessarily having established a reason to do so. I think the government phrased it in its closing argument as the defendant came out of his car like a cowboy were the government's words they came out again primed to shoot not like a law enforcement professional who had been trained to first assess the situation and determine whether it called for the use of deadly force so that's one way that the government used the defendant's violation of his principles to establish state of mind. Another way that the government used that evidence again properly was to point to the sheer brazenness of the defendant's actions to argue that the way that he acted was essentially so beyond so far beyond how he had been trained indeed so far beyond common sense that the jury could infer from that that the defendant knew his use of force was unreasonable and there the government pointed to the defendant's actions that were contrary to training principles like that a defendant that an officer can only use deadly force when he reasonably believes that there's an imminent risk of death or great bodily harm, that an officer must adjust his use of deadly force as circumstances change, that a defendant must that the officer must assess the situation after he fires every few rounds to determine whether the changing circumstances continue to warrant the that the defendant was taught when he was a recruit in the academy. There was some discussion that was relating to the use on a firing range rather than actual situations. Correct Judge and Defense Counsel certainly pressed that point on cross-examination with Officer Jamison. Officer Jamison's testimony and you can find this on page 918 of the trial transcript. Officer Jamison's the range is intended to apply to the real world and then the defendant again despite that testimony advanced the argument during his closing argument that the jury should set aside everything that it heard from Officer Jamison because that training was specific to only the range and not the street and yet the jury clearly didn't credit that argument in choosing to convict the defendant. So again the government pointed to various training principles, some derived from the training on the range, some derived from what the defendant learned in his use of force classes and properly marshaled that evidence to establish the defendant's state of mind. Now the defendant argues earlier today and in his reply brief that these training principles that the government relied on were purely localized practices and I wanted to address that argument in two ways. One, there's a distinction between standardized and localized practices that is discussed I think particularly in the court's recent decision in Aldo Brown and I think it's worth noting that that distinction between widely used practices and localized practices is significant in Aldo Brown's discussion of the objective reasonableness inquiry, the first disputed element under section 242 and that makes sense because I think we can all agree that a violation of a local police practice shouldn't be necessarily evidence of a defendant's violation of the unreasonable force element, the unreasonable force prong of the Fourth Amendment, but admitting evidence of training on local practices would be of little if any concern for purposes of the state of mind inquiry. State of mind is always an issue in someone's state of mind. It's evidence of what literally what a defendant knows and so compliance with that training or a violation of that training can speak either way to whether the defendant acted locally. Was there an example or examples showing the difference between the training that's given in the Chicago training program versus national standard? There was not testimony specifically on that point judge. What there was testimony though was was testimony that showed that the training that the defendant received in 2006 was not actually purely localized. Sergeant Snelling who testified on the department's use of force on page 873 of the trial transcript, he testified in response to a question from the defendant that the training that the that the that officer Perano received in the Academy in 2006 was not more restrictive than state law and he said that the state law at the time and this that the state law at the time reinforces that the use of deadly force must be reasonable and necessary. That was Sergeant Snelling's testimony on pages 883 and 887 of the trial transcript. And you're saying though that it doesn't matter if it was local or standard for purposes of state of mind? Correct judge. It doesn't matter and yet in a world in which perhaps it did, here there was sufficient evidence in the record establishing that a substantial portion of the defendant's training was derived from Fourth Amendment principles and you see that in Sergeant Snelling's testimony again and again. He's consistently referring to principles from Tennessee v. Garner, from Graham v. Conner. He's not sourcing and sourcing them that way in front of the jury but he's consistently reminding the jury that what that or telling the jury what that the defendant was trained to use deadly force when reasonable and necessary, to use deadly force only when the circumstances present an imminent risk of death or grave bodily harm, that officers are trained to make these decisions in split-second circumstances. All of these principles are derived from the Fourth Amendment. Now the defendant also argues that training was the sole basis for the jury's finding that the argument that the government presented insufficient evidence to support the jury's finding that the defendant, that Officer Perano acted willfully. But training was not the only piece of evidence. There was the brazenness of the defendant's actions themselves is an argument that the government made also established his willfulness. The fact that he acted in a manner that yes violated his training principles but frankly also violated common sense. The way that he pulled his weapon as immediately as he did. The fact that he continued to fire, stopping only after he had emptied his magazine, continuing to fire even as the Toyota rolled to a stop. All of those actions suggest that the defendant knew that his actions were plainly wrong. And then what the government also pointed to as evidence of the defendant's willfulness is the defendant proffered reasons after the fact justifications for the shooting that didn't quite match up with his actions themselves. And that disconnect, the disconnect between his justifications for shooting and what actually happened suggested that the defendant allowed the jury to infer that the defendant knew that he had acted improperly and was engaged in some kind of after-the-fact cover-up. I think the district court talked about how his after-the-fact justifications were so implausible and weak that the jury couldn't credit them. And in particular I'm referring to the defendant's pointing to Kevon Brown as the reason why he shot this boy who was hanging out from the car or hanging above the roof line of the car. The defendant immediately after the shooting said that he shot in order to preserve the life of Kevon Brown. Well in order to prove willfulness the government undercut that Kevon Brown was not in fact being dragged as evidenced by both video and testimony at the trial. That Kevon Brown was out of the vehicle and yet the defendant continued to shoot. That the defendant argued that he was shooting at the driver of the car in order to save the life of Kevon Brown and yet his bullets were heading in the general direction of the Toyota which is exactly where Kevon Brown was positioned initially and in fact a bullet casing was recovered from the rear driver's side floorboard of the Toyota which was the position of the car in which closest to where Kevon Brown had been positioned. And so I think it is a meritless argument for the defendant to suggest A that the training evidence was improperly admitted but B that even if it were improperly admitted that the jury's finding the defendant acted willfully lacks any kind of foundation at that point because in addition to the training related evidence there was other evidence, ample evidence. I don't recall, was there another officer with the defendant when he arrived at the scene? There was, Judge. There was. The jury did not hear from that officer. He didn't testify. He did not testify, no. I want to address the defendant's argument that he raised briefly about the lack of personal knowledge that the training witnesses had for the testimony that they proffered and I want to address that briefly again. There was a sufficient foundation laid for the testimony of Sergeant Snelling and Officer Jameson. Both individuals testified that they taught at the Academy during the relevant time period. That was in 2006. They both testified that there was a uniformity of instruction through the use of a standard or common curriculum. Sergeant Snelling testified about a concept that he referred to as cross-training, meaning that there was observation by instructors of the courses taught by other instructors and Officer Jameson in particular testified about how any And so that kind of testimony provided Sergeant Snelling and Officer Jameson sufficient foundation to then go on to testify about the training that the defendant received in 2006 and so the District Court did not abuse its discretion in admitting that evidence at trial. The defendant also argues that the jury instruction that the District Court gave regarding willfulness was incorrect. That position, too, the government contends lacks merit. The instructions were an inaccurate statement of the law and the law requires that the jury be instructed that in order to find the defendant acted willfully, first they must find that willful means that he intended to deprive a victim of his constitutional right and second that the defendant acted intentionally, which means that he acted with knowledge and awareness that one's actions were unlawful. That's what the law requires. That's exactly what the instructions here required and so an argument that that the jury instruction here defining willfulness was incorrect is not an argument with merit. Unless there are any further questions for the government, I ask that the court affirm the defendant's convictions. Thank you, Counselor. Thank you. I'll speak to the last point that the government made with respect to the jury instruction. The jury instruction in this case that that we have raised and taken issue with, it defined intent as the defendant acted intentionally if he used force knowing that the force he used was more than the would have used. The defendant did not act intentionally if he did not use force knowing that the force he used was more than a reasonable police officer. The jurors were further instructed that it could use Proano's training in making this determination and we believe that is an inaccurate statement of the law. In this case, there was no evidence of a willful deprivation of a federal right. The Aldo Brown case, which the government spoke to earlier, that goes towards evidence of training. Again, as I said earlier in my argument, it may be relevant when it's standardized in nationwide training because that goes to a constitutional issue. General orders in police department training, they're one and the same thing, these general orders and training. But isn't the specific intent or willfulness issue an individual issue as opposed to a constitutional reasonableness issue? So wouldn't individual training matter as to an individual's knowledge? Well, I don't think individual training on police department policy could speak to the willfulness of a police officer with respect to a willful violation of a federal constitution claim. It simply is the willfulness pronged here. It cannot be proven, and it wasn't proven, based upon the training evidence. There had to be evidence to support that there was a willful deprivation of a federal right in the training that was used in this case. First of all, it didn't come to that, didn't reach that level, but second of all, there was no foundation for the evidence to come in. There was testimony about Larry Snelling, and it sounds like he was testifying about laws in Tennessee v. Garner and constitutional provisions. There's no foundation for Larry Snelling, who is a gym instructor, to provide that testimony. And the same thing goes with Mr. Jamison. So we believe that those witnesses should have not been allowed to testify. Essentially, the jurors were allowed to, were given essentially an out from proving or establishing a specific intent in Mr. Proano to violate a federal constitutional right here. And it was done through the evidence and the jury instructions, and for those reasons, we would ask that you reverse the conviction. Thank you. Thank you. Thanks to both counsel and the case is taken under advisement.